# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**GLADYS ANDERSON, et al.**                                             **PLAINTIFFS**

**V.**                      **Case No. 4:23-cv-00685-LPR-ERE**

**NEWRAYS ONE LLC**                                                   **DEFENDANT**

## ORDER

On May 12, 2025, Defendant NewRays One LLC filed a motion and supporting brief to enforce a subpoena duces tecum issued to a nonparty, Faulkner County Chief Deputy Sheriff Chad Wooley. *Docs. 91, 92*. In addition, NewRays asks the Court to impose sanctions, including attorney fees and costs. *Id*. Chief Deputy Wooley has filed a response opposing NewRays' motion for sanctions but stating no objection to reconvening his April 4 deposition for the purpose of follow-up questions. *Doc. 98*. After careful consideration and for reasons that follow, NewRays' motion is denied.[1]

## I.    Background

Plaintiffs are Faulkner County residents who allege they have suffered injuries from noise produced by NewRays' crypto mining operation located in the county. *Doc. 40.* On May 19, 2024, Chief Deputy Wooley measured the intensity of sound

---

[1] On May 28, 2024, United States District Judge Lee P. Rudofsky referred this case to me, Magistrate Judge Edie R. Ervin, for all discovery proceedings. *Doc. 61*.

coming from the crypto mine to determine whether it exceeded decibel limits specified in Faulkner County Noise Ordinance 23-20, and he referred the results to the Faulkner County Prosecuting Attorney's Office for prosecution. *Doc. 91-3 at 10*.

On March 7, 2025, NewRays served Chief Deputy Wooley a notice of deposition and subpoena duces tecum, which commanded him to bring specific items to his deposition, including all bodycam footage of his decibel measurements.[2] *Doc. 91-2 at 5*.

---

[2] Schedule A to the Subpoena (*Doc. 91-2 at 5*) commanded Chief Deputy Wooley to bring the following to his April 4 deposition:
1. All equipment you used by the Faulkner County Sheriff's Department to undertake sound testing measurements to investigate NewRays One, LLC's compliance with Faulkner County Ordinance 23-20 from January 1, 2023, to the date of the deposition.
2. All calculations, data, documents, materials, notes, and other records generated by the Faulkner County Sheriff's Department when undertaking sound testing measurements to investigate NewRays One, LLC's compliance with Faulkner County Ordinance 23-20 conducted by the Faulkner County Sheriff's Department from January 1, 2023, to the date of the deposition.
3. All bodycam footage recorded during sound testing measurements conducted by the Faulkner County Sheriff's Department to investigate NewRays One, LLC's compliance with Faulkner County Ordinance 23-20 conducted by the Faulkner County Sheriff's Department from January 1, 2023, to the date of the deposition.
4. All training materials used or received by personnel of the Faulkner County Sheriff's Department to undertake sound testing measurements to investigate NewRays One, LLC's compliance with Faulkner County Ordinance 23-20 from January 1, 2023, to the date of the deposition.
5. All documentation of all other efforts by the Faulkner County Sheriff's Department to investigate compliance with Faulkner County Ordinance 23-20 by all other persons besides NewRays One, LLC from January 1, 2023, to the date of the deposition.

At his April 4 deposition, Chief Deputy Wooley testified that he conducted sound measurements four times: September 8, 10, and 12, 2023 and May 19, 2024.[3] He recorded all three of his September 2023 sound measurements via bodycam, and he produced that footage in response to the subpoena duces tecum. However, Chief Deputy Wooley did not produce footage of his May 19, 2024 sound measurements, because:

> Being administrative, I'm not out on the street normally every day. So if I know ahead of time that I'm going out to do some kind of activity, I will go in the records room, and I will pull a body cam off the docking station [and] sign it out to myself. As I did the other times, I can -- it would be speculation at this point, because I don't recall, that there wouldn't have been a camera available on that docking station at that time, because I don't keep one assigned to me at all times.

*Doc. 91-3 at 6*. He explained the process of signing out a body cam:

> So we have – there's a docking – it's the computer program, Motorola. You go in there, and you pull up records room docking stations. It gives you a list of body cameras that are available for use. You drop down, hit your name. It beeps. You go pick it up, and it's assigned to you. When you get done, you put it back on the dock. It uploads the footage. Anybody else can check out that same . . . camera. They just have to -- it gets reassigned.

*Id. at 6*. Chief Deputy Wooley repeated that he could not be certain that no body cams were available to him on May 19, 2024, but he assumed that was the case. He

---

[3] *See Doc. 92 at 4*. NewRays provides only a portion of the deposition transcript, which does not include Chief Deputy Wooley's testimony about specific test dates. However, Chief Deputy Wooley does not appear to dispute NewRays' description of his testimony.

stated: [T]hat would be . . . my only reason I probably wouldn't have had one, is there was not one available, because I did get them on these other dates." *Id*.

NewRays' counsel asked Chief Deputy Wooley whether the Sheriff's Office bodycam checkout system created a log documenting checkout activity, and he answered, "It should." He said that his "IT guy" would have access to such information, *if it existed*, and that he would instruct his "IT guy to search for recordkeeping related to . . . May 19, 2024." *Id. at 8*. Counsel stated: "I'd like to request that you do that. *I had not specified this in the subpoena, but I'm happy to work with you . . . about that*." *Id*. (emphasis added).

During his deposition, Chief Deputy Wooley acknowledged that: (1) he referred his May 19, 2024 decibel measurement to the prosecuting attorney's office "for . . . a violation"; (2) he received instructions from the prosecuting attorney's office to serve criminal summonses on NewRays representatives Chunhua Zhao and Changhong Wu; and (3) he had not produced any text messages in response to the subpoena duces tecum. *Id. at 10-12, 14*. Chief Deputy Wooley testified that he could not recall communicating with prosecutors via text message about serving criminal summonses on NewRays representatives but stated he was willing to "look into that." *Id. at 17*. After questioning Chief Deputy Wooley, NewRays' counsel stated:

> I can envision questions remaining about two issues which I want to talk with the lawyers about, which is why I would keep it open, the

> bodycam footage check-in/checkout [and] any sort of service instructions related to these individual defendants.

*Id. at 17*.

On April 21, 2025, Chief Deputy Wooley's attorney provided NewRays text messages from Chief Deputy Wooley's phone. *Docs. 91-6, 91-7*. The subject of each text message has a connection to NewRays, but none concern criminal summonses. In an affidavit responding to NewRays' motion to enforce and for sanctions, Chief Deputy Wooley states: "The text messages provided were all the texts in my possession involving NewRays." *Doc. 98-1 at 2*.

Chief Deputy Wooley's attorney also provided NewRays four spreadsheets of "device audits" obtained from the Sheriff's Department IT staff. *Docs. 91-6, 91-8, 91-9, 91-10, 91-11*. The spreadsheets provide no discernably meaningful information and do not indicate whether a bodycam was available to Chief Deputy Wooley on May 19, 2024. *Id.* In his affidavit, Chief Deputy Wooley states, "After contacting IT Staff . . . it appears that the 'device audits' were, in the end, duplicative/unclear and that usable check in/check out records to not appear to readily exist after this further inquiry." *Doc. 98-1 at 2*.

Finally, Chief Deputy Wooley states that he has no objection to reconvening his deposition for follow-up questioning about bodycam inventory records and text messages.

## II. Discussion

NewRays asserts that Chief Deputy Wooley has possession, custody, or control of materials that are responsive to the subpoena, which he has not produced: (1) bodycam inventory records documenting checkouts; and (2) text messages between Faulkner County officials and him regarding efforts to serve criminal summonses on Chunhua Zhao and Changhong Wu. NewRays asks the Court to enforce the subpoena and "compel production of all of Wood's body camera records since September 1, 2023, within [his] possession, custody, or control." *Doc. 92 at 15*. In addition, NewRays asks the Court to impose sanctions, including reasonable attorney fees and expenses necessary to reconvene Chief Deputy Wooley's deposition.

"A subpoena is a lawfully issued mandate of the court issued by the clerk thereof. It is the responsibility of every citizen to respond to this mandate, and it is within the court's power to force that response." *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1340–41(8th Cir. 1975) (citing *United States v. Bryan*, 339 U.S. 323, (1950)). In addition, the court for the district where compliance is required "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

Here, there is no basis to compel compliance with the subpoena duces tecum, hold Chief Deputy Wooley in contempt, or impose sanctions. First, the subpoena *did not*

command Chief Deputy Wooley to produce bodycam inventory records or communications of any kind regarding efforts to serve criminal summonses.

Notably, NewRays' counsel conceded at the deposition that the subpoena "had not specified" a request for bodycam inventory records but counsel "was happy to work with" Chief Deputy Wooley and his attorney to obtain any available records. *Doc. 91-3 at 8*. Rather than "work with" Chief Deputy Wooley, counsel asks the Court to enforce compliance with a subpoena request that was never made.

Second, under the penalty of perjury, Chief Deputy Wooley states that no bodycam inventory records or text messages about serving criminal summonses are in his possession, custody, or control, and NewRays provides no basis to question Chief Deputy Wooley's testimony.[4] The Court cannot force Chief Deputy Wooley to produce something that does not exist.

Finally, NewRays will suffer no prejudice if the relief requested is not granted. Discovery does not close until September 5, 2025 (*Doc. 84*), and the parties have ample time to reconvene Mr. Wooley's deposition for follow-up questions about bodycam inventory records and text messages, or the lack thereof.

---

[4] Contrary to NewRays' report, Chief Deputy Wooley *did not* testify that "the inventory system exists and that he had instructional authority to produce inventory records." *Doc. 92 at 15*.

IT THEREFORE ORDERED that Defendant's motion to enforce subpoena (Doc. 91) is DENIED.

Dated 5 June 2025.

_____
UNITED STATES MAGISTRATE JUDGE